## JOLIET STREET RAILWAY COMPANY
### v.
## JOSIE CALL.

*Street Railroads—Negligence—Personal Injuries—Personal Examina-
tion—Evidence—Instructions—Practice—Wrongful Frightening.*

1.    Admitting that a trial court has the power to order that a plaintiff
in a personal injury case be examined by physicians out of the presence of
the jury, the exercise thereof is discretionary with it.

2.    In personal injury cases, where the plaintiff is a female, it is improper
to admit evidence touching her character, or the character of the house at
which she resides.

3.    Instructions giving undue prominence to certain evidence introduced
in a given case should not be given.

4.    In an action brought to recover damages for personal injuries alleged
to have been sustained through the negligence of a street car company, this
court holds as proper the admission of evidence as to the experience of the
servants of the defendant in stopping cars at a point named on the day of

the accident, likewise the refusal to admit evidence that they had stopped cars there before that day without accident, it not tending to rebut the evidence of negligence in the particular instance, and declines to interfere with the verdict for the plaintiff.

5. This court will not consider the contents of a declaration not abstracted.

[Opinion filed December 7, 1891.]

Appeal from the Circuit Court of Will County; the Hon. Charles Blanchard, Judge, presiding.

Messrs. Egbert Phelps and Donahoe & McNaughton, for appellant.

Before the offering of any evidence in the case defendant moved the court to order the plaintiff to submit herself to a private examination by three reputable physicians to be appointed by the court, at defendant's expense, that those physicians might be used as expert witnesses; which motion the court allowed to be put in writing. The court overruled the motion on the ground of lack of power to make the order. In this we think there was manifest error.

No decision on this point has, we believe, ever been made by either the Appellate Court or the Supreme Court of this State. The nearest to it is one in which the Supreme Court held that a plaintiff could not be compelled to submit to such an examination in the presence of a jury. The power to compel a private examination has never been passed upon in this State. In other States, however, it has been repeatedly held that the defendant has the right to demand, and the court the power to compel, such an examination, and should use it in a proper case. The point is elaborately discussed in Sibley v. Smith, 46 Ark. R. 275 (see 55 Am. Rep. 584), citing and approving the doctrine set forth in Schroeder v. Chicago, 47 Iowa, 375; Walsh v. Sayre, 52 How. (N. Y.) 334; Shaw v. Van Rensselaer, 60 How. Pr. 143; Harold v. R. R. Co., 1 Hun, 268; to all of which we refer as sound law. See, also, White v. Milwaukee City Railway Co., 61 Wis. 536 (50 Am. Rep. 154); A., T. & S. F. Ry. Co. v. Thul, 29 Kan. 466 (44

Am. Rep. 659); Thompson on Trials, page 653, Sec. 859, reviews the authorities on this question.

The history of malingering in hospitals—and especially in the army hospitals during the late war—has proved that nothing is easier than for patients to simulate diseases and injuries, and that often the most eminent physicians are sorely puzzled to decide whether the disease is genuine or false. In a case like the present, where the plaintiff seeks to recover large sums for alleged injuries, and the temptation to fraud and deception is so great, it would seem but simple justice that such an examination should be ordered, that the plain truth as to the nature and extent of her injuries might be evolved. Otherwise corporations, manufacturers and all persons operating large establishments where such accidents are likely to occur, would be completely at the mercy of the designing, and the helpless prey of perjury and robbery. In the light of the above decisions and the manifest justice of the position as well as the necessity for protection to corporations or individuals, it is not deemed necessary to argue this point further. Nor could we make the argument stronger than by adopting the reasoning of the court in 47 Iowa, *supra*.

Mr. E. Meers, for appellee.

Cartwright, J. Appellee brought this action against appellant and obtained a verdict for $1,500, upon which judgment was entered. Appellant was operating a street railway run by electricity in the city of Joliet, on September 1, 1890, and on that day there was a "labor day" picnic at the shooting park near the terminus of the railway line. An electric motor car connected with an overhead wire along the center of the street was running to the shooting park, with an old open horse car not connected with the electric system coupled to the motor car by means of a coupling link and pin. Appellee became a passenger on the open car which was very heavily loaded with passengers, all the available space on the car including platforms and walks on the sides, being full. There

were brakes on the open car or trailer as it was called, which were of the ordinary horse car pattern, consisting of a spindle at each end of the car which could be turned to set the brakes, thereby winding up a chain on the lower end of the spindle, pulling a lever which would set the brake-shoes against the wheels nearest the spindle so turned and at the same time pull a rod, bringing brake-shoes against the wheels farthest away. There was a brakeman on the car at the end next the motor car but none at the other end. While ascending a grade the cars were stopped and the trailer car was uncoupled from the motor car, which proceeded up a steeper grade toward the park, to be relieved of its load, and return to pull the trailer car up the steeper grade. As soon as the open trailer car was uncoupled from the motor car it commenced to move backward, and continued to move with increasing speed until it reached a curve, where it left the track, and the wheels sinking in gravel it stopped in a leaning position. During the descent appellee in some way reached the street and fell on her back, sustaining personal injuries. It is claimed on the part of appellant that the court erred in refusing to require appellee to submit to a personal examination by doctors to enable them to testify for appellant as experts; that the evidence did not prove negligence on the part of appellant; that the court erred in refusing to admit evidence for appellant, and in refusing instructions for appellant; that improper remarks were made by counsel for appellee in his closing address to the jury such as to require a reversal, and that the damages awarded are excessive.

After the selection of the jury, appellant moved the court to appoint three reputable doctors at defendant's cost to make an examination of the plaintiff in private and that she be required to submit to the same so that such doctors might testify to the extent of physical injuries found on examination of her body. The motion was overruled by the court. Three doctors were produced and examined on the part of appellee as witnesses who had made examinations of appellee, and one of them had attended her from the time of the accident. They seem to have been disinterested and fair in their

testimony, and we see nothing nor is anything suggested which would lead us to believe that in this case any useful purpose would be subserved by having three additional experts selected by the court. There was no lack of evidence of the appearances and indications that were discoverable by doctors upon examination of her body, and which would furnish a basis for expert testimony on the part of appellant.

If it be conceded that the court has power to order such an examination, the question immediately arises whether a defendant is entitled, as a matter of right, to have the power exercised and the examination made, or whether it is a power to be exercised in the sound discretion of the court for the purpose of attaining the ends of justice, and where it may seem to be desirable for that purpose. If it be a matter of right, then, necessarily, the right extends to all cases wherever a defendant demands his right, and the court is powerless to judge of the necessity or propriety of it, but must enforce the right even where such examination is clearly needless or improper. If it is an absolute right to have a court select doctors and have an examination there should certainly be some sure way of enforcing an examination by the doctors selected; but suppose the doctors refuse, as they may, to obey the command of the court; in that event an absolute right would be unattainable. There are many cases, where to hold it an absolute right to have an examination of a sensitive person in matters of a delicate nature by doctors selected by others, would only enable a wrongdoer to add insult to injury and compel a party to give up substantial rights rather than submit, and where no good could be accomplished. It seems that from the very nature of things and the purposes for which an examination may become necessary, the propriety of it must rest largely in the discretion of the trial court, and if the power exists, the exercise of that discretion would not be interfered with by an appellate court unless in a case of plain abuse of discretion. In this view of the question there was no abuse of discretion in denying appellant's motion. But we understand the Supreme Court of this State to hold that there is no power in a court to make or enforce an order for such an examination. The case of

Parker v. Enslow, 102 Ill. 272, involved a question of perma-
nent injury to Enslow's eyes, and the trial court refused to
compel him to submit his eyes to the examination of a physi-
cian in the presence of the jury, and the Supreme Court say
that the court had no power to do it. The proposed exami-
nation in that case required no indecent exposure or other
improper act before the jury. It was a case where the court
doubtless might have required him to use his eyes to distin-
guish objects in the presence of the jury, and where an
examination in their presence would not apparently be objec-
tionable if the court possessed the power to order it. It
seems that there is no difference in principle between that case
and this. In the case of C. & E. R. R. Co. v. Holland, 122
Ill. 461, there was a motion for an order that plaintiff should
submit to an examination by two physicians named in the
motion and this motion was overruled by the trial court. The
Supreme Court say that it was not necessary to determine
whether that decision was erroneous or not, because there was
an examination at the instance of plaintiff, and nothing was lost
by the decision. In view of the uncertainty implied in the
later decision, we have discussed the question from the stand-
point of the existence or non-existence of the power, and
conclude that in either case there was no error in refusing the
motion.

The evidence of negligence on the part of appellant was
directed to the heavy loading of the open car, and the uncoup-
ling of it from the motor car without the brakes being set so
as to hold the car. The car was very heavily loaded, and
although it sustained the weight upon it, yet doubtless the
heavy load would render it more difficult to hold upon an
incline by means of brakes, and when running down hill with-
out control, would increase its force and velocity.

When the cars stopped on the ascending grade a fuse had
blown out on the motor car, and the superintendent of the road
who was on the motor car got off and replaced the fuse and
then uncoupled the trailer, which immediately moved off down
the grade. After it stopped, it was found that a bolt at the
other end of the chain from the spindle was broken, and this

had given the chain more slack and allowed it to wind around the spindle more times than usual, and rendered it impossible to set the brake-shoes tightly against the wheels. The superintendent testified that the bolt was not broken when he uncoupled the car, and that he first noticed that something was wrong after the car started, when he was trying to help set the brake; but it is manifest that there was something wrong about the brake when the uncoupling was done, as the car started back at once, indicating that the brakes were not set. The car had been held on the same day, at the same place and with about the same load. There was a brakeman at the spindle and he turned it as usual. One witness testified that when the superintendent undertook to uncouple the car, he took hold of the front end of the trailer brake with his hand and tried to slip the coupling pin; that the motor would start back and the trailer would go back with it; that the man in charge of the motor would control the front end of the motor, and when he would set the brake it would hold both cars, but when he would slack up they would go back together; that the superintendent would try to set the brake on the trailer and still try to pull the coupling pin, and all of a sudden it came out and the trailer went back. We think the jury were justified in finding that there was a failure on the part of appellant to exercise that degree of care for the safety of its passengers which the law requires.

The court admitted evidence of the experience of appellant's servants in stopping cars at the same point on that day, but refused to admit evidence that they had stopped cars there before that day without accident. In this there was no error. Hodges v. Bearse, 129 Ill. 87. The court also refused to allow appellant to prove the character of the house at which appellee resided and acts of appellee affecting her character. Such evidence was immaterial and appellant was allowed as much latitude in that respect as could be justified.

The instructions asked by appellant, which it is claimed were erroneously refused, are the ninth, twelfth, thirteenth, fifteenth and eighteenth. The ninth and twelfth selected from the evidence certain facts, such as the previous experience of

appellant, concealed defect in the bolt, and warning by the superintendent not to jump off the car, and told the jury that if they believed such facts proven they should consider them. Such instructions are bad as giving undue prominence to certain evidence and should not be given. The thirteenth stated that if appellee was overcome by fright and jumped from the car and was injured she could not recover unless her fright was occasioned by negligence of appellant.

The jury were told in various instructions that appellee could only recover upon proof that she used reasonable care, and that appellant was negligent, and that appellant's negligence was what caused her injuries. If an action be brought for a wrongful frightening, whereby injury results, and the gist of the action is that the frightening was negligent, then it must be proven to have been so. But here there was no evidence given of any act having merely the effect of producing fright as a ground of action. The state of mind of appellee when the car was running away under circumstances of apparent danger, was only an incident to be considered in determining whether she used reasonable care under all the circumstances. So far as the instruction was applicable to the case, it was embraced in the instructions given. The same is true of the fifteenth and eighteenth. The jury had been told that appellee must show that she used ordinary care as required by the fifteenth. The eighteenth states certain grounds of recovery as being alleged in the declaration, but the abstract contains no contents of the declaration, and under the rules of court we will not consider the question whether it contains these things or not. Whether it does or not, the point made is fully covered by other instructions. The fifth, which was given, stated that appellee was bound to prove every allegation contained in her declaration by a preponderance of the evidence in order to recover. This was stronger than the one refused, as it required her to prove every act of negligence alleged, while the refused instruction was in the alternative, and allowed her to recover on proof of one or the other of the negligent acts said to be alleged in the declaration. The one given was certainly strong enough.

Appellant's counsel in the closing address to the jury made

some improper remarks concerning a witness for appellee, but the court stopped him on objection being made, and instructed the jury to treat the statement as untrue.    The direction of the court in such cases does not entirely repair the injury done by such statements as this, but in this case the witness had by his own testimony shown his character in other respects to be such that we do not think any substantial injury was done to appellant by the statement.    The testimony of the witness referred to had no relation to the accident or responsibility for it, and was not of great importance in any view of the case.    We do not think the damages excessive.

The judgment will be affirmed.

*Judgment affirmed.*