## 106. CITY OF CEDARTOWN v. BROOKS.

1. A municipal corporation is bound to keep its streets and bridges in a reasonably safe condition for travel; and there is no error in so charging the jury. There was no error in the admission of evidence, or in the instructions to the jury, alleged to be erroneous.
2. It is within the discretion of the trial judge, upon a proper showing made therefor and at the instance and expense of the defendant in the action, to require a plaintiff, suing for physical injuries, to submit to an examination by competent physicians in order to ascertain the nature and extent and probable duration of the injury, and to afford means of proving the same at the trial of the cause. *Richmond & Danville R. Co.* v. *Childress*, 82 *Ga.* 719. It follows that it is likewise within the discretion of the judge to refuse to require such examination, and this discretion will not be controlled unless abused.
3. Proper exception must be taken to such refusal on the part of the trial judge, before it can be considered by this court.
4. (Per HILL, C. J., and POWELL, J.) It is error for the court to refuse to permit the defendant, in a suit for alleged permanent personal injuries, to prove that the plaintiff had refused to allow a committee of competent, disinterested physicians to make a reasonable physical examination, upon a timely request therefor, in order that the extent of the injury might be ascertained.

RUSSELL, J., dissenting (a) It is not assigned as error that the court abused its discretion in declining to compel a physical examination of the plaintiff in this case. In the absence of exception thereto, the exercise of a sound judicial discretion by a trial judge will be presumed. The discretion of the trial judge having been properly exercised in the case, the reasons of a plaintiff for refusing to allow a physical examination of her person (said refusal being in accordance with the order of the court) become immaterial and irrelevant. A physical examination should not be ordered except upon a showing of its necessity; and when the showing made to the trial judge is insufficient to warrant judicial interference in furtherance of justice, the fact that a plaintiff does not waive her right of personal inviolability raises no presumption prejudicial to her good faith in her claim for damages. The exercise of judicial discretion is not reviewable by jury trial.

(b) Unless the exercise of judicial discretion can be questioned in a trial of the main case before a jury, evidence that the plaintiff refused to submit to a physical examination tends only to prejudice unfairly a plaintiff's case, when the judge has declined to order such examination; and thereby is subversive, rather than in furtherance, of justice. Unless an examination has been ordered by the judge, and compliance with the order has been refused by the plaintiff, the subject is irrelevant and immaterial. The whole matter of such examination, including the grant or refusal of an order for an examination, and the effect of the refusal of a plaintiff to comply with such order, as well

as the penalty to be inflicted for such refusal, is within the discretion of the trial judge, and of no concern to the jury.

(c) Regardless of the rejection of testimony, the verdict is authorized by the evidence, and a new trial should not be granted.

Action for damages, from city court of Polk county—Judge Irwin. May 19, 1906.

Argued February 11,—Decided June 20, 1907.

*W. C. Bunn, J. K. Davis, W. H. Trawick,* for plaintiff in error.

*Seaborn & Barry Wright, Janes & Hutchens, W. W. Mundy,* contra.

RUSSELL, J. It is my peculiar fortune, in the division of our labor, to deliver the opinion of the court in this case, while I dissent from its judgment. My colleagues and myself are agreed as to all of the nineteen grounds of the motion for new trial except one. The majority think the lower court erred in one respect, and that a new trial should result. With all deference to my associates, it is my opinion that the trial judge did not err in repelling the testimony as to the refusal of the plaintiff to submit to a physical examination at the request of the defendant. Furthermore, I think, even if the court did err in this respect, that the verdict for the sum of $1,250, is so amply supported by the evidence that the error is not sufficiently grave to require another trial. From the respect I feel for the opinion of my colleagues, I would cheerfully forego the expression of my views were I not convinced that the decision of the majority upon the subject on which we differ is likely to be injurious to that dignity and respect which is essential to the usefulness of a judicial tribunal, and may cause the introduction into many trials of personal issues, which are always prejudicial and ofttimes entirely incompatible with an impartial trial. Any door opened to passion affords an easy exit for the spirit of judicial poise which should characterize and control the functions of a jury. Those grounds of the motion upon which we are all agreed will first be dealt with, and I shall then present the reasons for my non-concurrence in the judgment of reversal.

Mrs. M. J. Brooks brought an action against the City of Cedartown for personal injuries sustained by her in jumping from a buggy in which she was being driven across a bridge on Main street in said city. Upon the trial of the case the jury rendered a ver-

dict in favor of plaintiff for $1,250. The defendant made a mo-
tion for new trial. The motion was overruled, and thereupon de-
fendant excepted and brings this writ of error. In her petition
the plaintiff alleges that on the 10th day of March, 1904, she was
riding along the streets of Cedartown in a buggy drawn by two
horses. As said buggy was crossing a bridge, known as Main
street bridge, the foot of one of the horses passed through and
caught in the flooring of said bridge, and thereupon both horses
became frightened and unmanageable. Fearing she would be
thrown from the buggy, the plaintiff jumped therefrom to protect
herself, and in so doing sustained injuries which she alleges are
permanent. She alleged that on account of said injuries she has
endured great pain and suffering, and asks damages against the
city for $20,000. The defendant filed its answer denying liabil-
ity, and also demurred.

Subsequently to the return term of the court (the record failing
to reveal whether in term time or vacation) the defendant pre-
sented a petition to the judge of the city court of Polk county,
praying that the court appoint a committee of competent physi-
cians, to act in conjunction with the plaintiff's physician, to ex-
amine into the physical condition of plaintiff. Upon said peti-
tion the judge of said court passed an order naming three physi-
cians in accordance with the prayers of said petition, and the order
provided that said committee should act in case plaintiff *consented*
to be examined. At the January term, 1906, the defendants pre-
sented an additional petition, partially in the form of an amend-
ment, substantially the same as the one heretofore mentioned, stat-
ing that the plaintiff had refused to consent to being examined by
the committee appointed. In this latter petition the defendant of-
fered to pay the cost of such examination, etc. The record does
not disclose any order by the court refusing to require the plain-
tiff examined by said committee as provided for in said supplemen-
tal petition.

The evidence for plaintiff was substantially as follows: On
Sunday, July 10, 1904, she was riding in a buggy with her hus-
band, accompanied by two small children and a baby. On their
drive they safely crossed Main street bridge in the City of Cedar-
town. Returning home, however, when they had driven upon this
bridge, one of the horses hitched to the buggy became frightened

at a patch on the bridge floor, shied to the right, and the right foot of the left horse went through the bridge floor. The bridge had recently been repaired by an employee of the city, but the planks used for doing the .patching were old and partially rotten at the time they were placed over the hole. It was when the horse stepped upon one of these rotten patches that its foot went through the bridge floor. The plaintiff and her husband jumped from the buggy, the former to avoid being thrown from the buggy, and the latter to lift out the children and loose the horses from the buggy. After they had alighted, assistance came, the harness was cut, the horses taken loose from the vehicle, and after a considerable struggle the horse extricated its foot from the hole. The piece of plank used to make the patch was about twelve inches wide and about two feet long. The patching was done by nailing it over the floor where a hole had worn into it. The flooring used had originally been about two inches thick, but had worn down to about one fourth of an inch in thickness. The husband of the plaintiff crossed the bridge four times a day, being a rural mail carrier. Both testified that ever since the date of the injury she had suffered pain. She was pregnant at the time, some three months advanced. On the night of the injury she came near having a miscarriage. A physician was called in next morning. He gave her internal treatment for prevention of the miscarriage. She continued to pass blood until the 20th or 21st of August following, at which time she had a miscarriage. She had suffered continuously from the date of the injury, and her health had been so bad that she was scarcely able to do anything after that date. The physician was advised of her condition daily, but did not see her but a few times.

The defendant offered no evidence. In addition to the original motion, containing the usual general grounds, there are two amended motions specifying numerous assignments of error, numbered consecutively from 1 to 17. We will take these up in their order, saving the ninth, which will be treated last.

1. Because the court erred in charging the jury as follows: "I charge you, gentlemen, that it is the duty of the City of Cedartown to keep its streets and bridges in a reasonably safe condition for travel. The law does not require that the roads and bridges be kept in an absolutely safe condition, but in a reasonably safe

condition. Now, gentlemen, you look to the condition of the bridge, and determine from the evidence whether or not it was in a reasonably safe condition at the time of the alleged injuries." We think there is no error in this charge, when measured by the standard laid down in the case of *Atlanta* v. *Buchanan, 76 Ga.* 539, where it was held, "We are clear that the city is bound to keep its streets, sidewalks, and bridges in a reasonably safe condition; and there is no error in so charging." It is further held that "to keep," when applied to streets, sidewalks, and bridges, might well include "to construct, to make." In the case at bar the undisputed evidence is that the patches were rotten, and hence the bridge could not, from the time it was thus patched, have been kept in a reasonably safe condition for travel. Applying this law to the facts in this case it appears that the work was not going on, but had been completed, and ordinary care had not been exercised in keeping the bridge in reasonably safe condition.

2. Because the court erred in charging the jury as follows: "In determining whether the plaintiff, Mrs. Brooks, was justified in jumping from the buggy, you will apply the rule of ordinary diligence. Ordinary diligence is that care which every prudent person takes of his own property of a similar character, such care as every prudent person would exercise under similar circumstances." While the first part of the charge is not applicable to this case, the last clause sets out a correct definition of the terms employed, and the allusion to property in the first clause could not have misled the jury so as to impair the rights of the plaintiff in error or be an error of sufficient importance to cause the grant of a new trial.

3, 4. The third and fourth grounds of the motion are to the effect that in these portions of the charge the court expressed an opinion of the evidence. We fail to see any merit in these contentions.

5. We think the charge of the court that the knowledge of the husband could not affect the wife's right to recover was proper.

6. The sixth ground of the motion for new trial avers that the court erred in charging the jury on the subject of permanent injuries, for the reason, as stated, that the only allegation with respect thereto was stricken on demurrer. The defendant's demurrer, it is true, was sustained, but it was only addressed to certain

words in the fifteenth paragraph of the petition. The demurrer did not reach the 18th and 19th paragraphs. The record negatives the contention that all allegations as to permanent injuries were stricken. Paragraphs 18 and 19 of the original petition, and the evidence adduced thereunder, fully authorize the charge to which objection is made.

7. We think the principle that if the plaintiff's injury was caused by her own negligence, she could not recover, is sufficiently explained to the jury in the charge of the court.

8. There is no merit in the assignment of error of the eighth ground of the motion; for the jury was, in another portion of the charge, instructed that there could not be a recovery unless there was an injury.

10. The tenth ground contains an objection to the admission of testimony to the effect that defendant in error complained to her husband. The complaints objected to seem to be a part of the res gestæ of the pain and suffering, and to be admissible under the ruling in *Atlanta Ry. Co.* v. *Gardner,* 122 *Ga.* 97, citing Nor. Pac. R. Co. *v.* Urlin, 158 U. S. 271, 275. For this reason the objection that such evidence was incompetent is not well taken.

11. While the evidence objected to in the eleventh ground might at the first glance appear to be a conclusion of the witness, it is evident, when taken in connection with his other testimony on the same point, that, after having stated the facts, he is giving his reasons for the statement made in his testimony. Any witness may give his opinion as adduced from facts already fully stated by him, the value of the opinion being for the jury.

12. We do not think this testimony of the husband was incompetent. He certainly could know of his own knowledge what was the condition of his wife's health. He could well know whether she was weak or strong, and, from seeing her make an effort to perform certain duties, whether she was able to perform them or not

13. In the thirteenth ground of the motion complaint is made that the plaintiff and her husband were permitted to testify that her menstrual periods had become irregular since her injury, and that she suffered great pain in consequence of this irregularity. There was no error in allowing this evidence to go to the jury, under the pleadings. Paragraphs 18 and 19 of the original decla-

ration, which alleged permanent injury to plaintiff's health and which were not demurred to, were broad enough in their terms to admit of the testimony referred to. A proper objection to the testimony of the husband might have been sustained, but the objection offered was without merit.

14, 15. The testimony complained of in these two grounds of objection was properly admitted, for the reason stated immediately above. The term "health" includes appetite. Under the pleadings the range of testimony was necessarily very broad. No demurrer was filed to paragraphs 18 and 19.

16. The statements of the witness, that she did nothing to cause the miscarriage that she knew of, and that she was as quiet as could be prior to the miscarriage (objected to in the sixteenth ground of the motion, as being conclusions of the witness), are not, in our opinion, objectionable upon that ground. Each is the statement of a fact. We are of the same opinion as his honor, who admitted the testimony with the remark, "If she had not done anything, we don't know what else she could state."

17. In the seventeenth ground of the motion error is assigned as follows, upon the following instruction delivered to the jury: "The burden is upon the plaintiff to show that her injuries are permanent, and that her pain and suffering would likely continue through life. The burden is on her to show that. If she has failed to show that her injuries are permanent, and that her injuries will continue through life, then you will be authorized; if you find the city liable under the rules I have given you in charge, to find for such time she has proven she has suffered." "Movant says this charge was error, because it expressed the opinion of the court as to the facts of the case. Because it excluded from the jury the question of whether or not the plaintiff had suffered. Movant says that the sentence, 'You will be authorized, if you find the city liable under the rules I have given you in charge, to find for such time she has proven she has suffered,' excludes from the jury entirely the question as to whether or not plaintiff has suffered, and directs them to find for her accordingly." While the court could, by repetition of a prior instruction, perhaps have been a little more full and definite in this instruction, it is not subject to the objections urged, that it expresses an opinion on the evidence, or excludes from the jury the question of whether or not

plaintiff had suffered. A jury of ordinary intelligence must have known from this charge that the defendant in error could only recover for the pain she had proved she suffered. Hence, if no suffering had been proved, she could not recover for any.

9. Complaint is made, in the ninth ground of the amended motión, that the court erred in withholding from the jury testimony (which the plaintiff in error says it could have adduced from the plaintiff and her husband on cross-examination) that the plaintiff refused to permit a physical examination of her person by physicians (suggested by the defendant some weeks before the trial) for the purpose of determining whether such injuries could not be remedied. It is further alleged that plaintiff in error also offered at the trial to have plaintiff examined at the city's expense, and she declined. Solely upon this ground the majority of the court hold (in the opinion hereto attached) that a new trial must be granted. In my opinion there is no such assignment of error as requires the court to consider this ground of the motion. But, waiving this point entirely, I am firmly of the opinion that the ruling of the court in declining to allow such testimony to be introduced is no ground for reversing the judgment of the trial judge in refusing to set aside the verdict of the jury on motion. The *only* point settled by the decisions in *R. & D. R. Co.* v. *Childress,* 82 *Ga.* 719, 722, *S., F. & W. Ry. Co.* v. *Wainwright,* 99 *Ga.* 255, *Bagwell* v. *Atlanta Ry. Co.* 109 *Ga.* 612, and *Macon Ry. Co.* v. *Vining,* 120 *Ga.* 514, is that it is *within the power* of the trial court, in the exercise of its discretion, to compel the plaintiff to submit to a physical examination. At the time of the ruling in the *Childress* case the courts of other jurisdictions were in sharp conflict upon the question whether a physical examination of a plaintiff in an action for personal injuries could be ordered, without his consent or acquiescence. The common law had known nothing of such a practice, unless the writ de ventre inspeciendo be taken as a precedent; but a superior court of New York had asserted the power (in Walsh *v.* Sangre, which has since been overruled), and the Supreme Court of Iowa in Schroeder *v.* Chicago Ry. Co., 47 Iowa, 375, had affirmed its existence. But some of the courts, whose opinions are generally regarded as most weighty, are opposed to the exercise of the power. See Union P. R. Co. *v.* Botsford, 141 U. S. 250; Ill. Cen. R. Co. *v.* Griffin, 80 Fed. 278

(holding that such an examination can not be compelled either before or during the trial) ; Stock v. New York, N. H. & H. R. Co., 177 Mass. 155; McQuigan v. Delaware, 129 N. Y. 50; Newman v. Third Ave. Ry. Co., 18 Jones & S. 412; Cole v. Fall Co., 159 N. Y. 59, 53 N. E. 670 (affirming 87 Hun, 584) ; McSwyny v. Broadway Co., 54 Hun, 637; Roberts v. Ogdenburgh R. Co., 29 Hun, 154; Pittsburg, C. C. & St. L. R. Co. v. Story, 104 Ill. App. 132; Peoria R. Co. v. Rice, 144 Ill. 227; Joliet St. Ry. v. Call, 143 Ill. 177 (affirming 42 Ill. App. 41) ; Mills v. Wilmington R. Co., 1 Marv. (Del.) 269. See also Mary v. Northern P. R. Co., 32 Mont. 522, and Kingfisher v. Altizer, 13 Okla. 121. Our individual opinion follows that of the Supreme Court of the United States in U. P. R. R. v. Botsford, supra, in which Judge Gray, delivering the opinion of the court, says: "No right is held more sacred or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, 'The right to one's person may be said to be a right of complete immunity: to be let alone.' Cooley on Torts, 29. The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obselete in England, and never, so far as we are aware, introduced into this country. So far as the books within our reach show, no order to inspect the body of a party in a personal action appears to have been made, or even moved for, in any of the English courts of common law, at any period of their history."

The *Childress* case, however did not place Georgia "in line" with Iowa, Kansas, Nebraska, Wisconsin, Arkansas, and Missouri, whose courts had asserted the right to dismiss a plaintiff's action where an order for a physical examination was not complied with. The decision in the *Childress* case was expressly based upon the

provisions of the Civil Code, §4047, par. 4, conferring upon every court power "to control, in furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it in every matter appertaining thereto," and was supported by 1 Thompson on Trials, §859, as authority. I am unable to find any case, however, where the penalty of a dismissal of the action has been affirmed in this State. In *Bagwell* v. *Atlanta Ry. Co.*, 109 *Ga.* 611, the judgment dismissing the action, because the plaintiff did not compel his daughter to be examined, was reversed. In rendering the opinion Judge Lumpkin, after ruling that all that had ever been held in Georgia was that it was within the power of the court, in the exercise of its discretion, to compel the plaintiff. to submit to an examination, clearly intimates that a dismissal of the action is not the proper penalty in Georgia, where a female is sought to be subjected to the pain of an examination of her person. He repeats with approval the statement of Chief Justice Bleckley, that there should be no danger in this country of an examination being ordered needlessly or where an improper shock to womanly modesty or feelings of delicacy would be likely. In both the *Wainwright* case and the *Vining* case orders. for a physical examination of the plaintiffs were refused, and the judgment of the trial judges were affirmed. After a careful examination of the original record in the *Wainwright* case,. it is clear to my mind, from the language employed in the first headnote in 99 *Ga.* 255, that the court did not err in this case or abuse his discretion in not ordering the examination. Indeed,. there seems to be no contention, for the record does not disclose any exception, complaining that the court abused his discretion in refusing to compel the plaintiff to undergo a medical examination. The discretion to order a physical examination existing, any abuse of that discretion can be reviewed as matter of course. But that is not the question here. The only objection presented is that the court refused to allow testimony, to the effect that plaintiff had refused to undergo such examination, to go to the jury. I think that the judge properly refused to allow the plaintiff in error to put in evidence in this case the fact that the defendant. in error had refused to undergo an examination of her person by the committee. This evidence would have been immaterial and. irrelevant, and there are many good reasons why it should not have

been allowed to go to the jury. Among them is the reason that the only purpose for which such evidence is admissible is to discredit the witness and prejudice the case in the eyes of the jury. To allow the jury to have evidence that the plaintiff has refused to submit to examination must be for the purpose of showing that she had some improper motive for refusing, and the intention is thereby to lessen her credit. I do not think this would have been proper in the case at bar, for the reason that the court had declined to use his discretion in favor of the defendant's request, though application had been made. The plaintiff had never been ordered to submit to an examination. The court being clothed with a discretion in the matter, the conduct of the party, except as such party might oppose the proper orders of the court, became immaterial. The plaintiff had the right to conduct her case as she saw fit, and certainly no presumption of bad faith as to her claim of injury could justly arise against her for consenting or refusing to submit to an examination which the court, in its discretion, declined to order, without attaching inevitably the conclusion that the court erred in not ordering it, which, under all of our decisions, means an abuse of discretion.

If I am correct in my view that the compulsory examination of a plaintiff suing for personal injuries is a power to be exercised by the lower court in its sound legal discretion, what is to be the effect of evidence of a refusal to be examined? Such evidence is admissible in courts, such as those of the United States, where the power of the court to compel a physical examination is denied; and the reason is manifest. In such forums the jury is the only tribunal before whom the issue of good faith (taking willingness to be examined as the test) can be taken; whereas in our State the whole question is submitted to the judge. The reason for the rule admitting testimony of refusal ceases, because in a proper case there must either be an examination or the case will be dismissed. The whole question is addressed to the judge. It is presumed that upon a proper showing he will order an examination. If he fails in such a case to order the proper examination, his abuse of discretion can be the subject-matter of review by writ of error. If, as my colleagues insist, the principle on which this testimony is admissible is that the refusal of a plaintiff to submit to an examination is akin in principle and similar in effect to the

38

failure to produce evidence under the terms of the Civil Code, §5163, then the judge, who has exercised his discretion and held that there is no necessity for an examination, can by proper request be required to charge the jury, in effect, that such action on the part of the plaintiff is suspicious to say the least of it; and if the jury, believe the refusal is evidence of bad faith, then the jury can find that fact and will also find at the same time that the judge erred in not forcing an examination. Our code section (Civil Code, §5163) is nothing but the incorporation of a familiar rule of evidence in practically the language employed by the Supreme Court in decisions in the 71st and 77th and 83d *Ga. Reports.* This rule, similarly expressed in Starkie on Evidence, has reference to such evidence as is universally recognized. It does not refer to such evidence as that deduced from an examination of the plaintiff's body in this case, which can not be presented to the jury, must depend upon the opinion of experts, is not obtainable by subpœna or usual processes, and can only be ascertained and brought to court after the judge, in the exercise of a wise discretion, has had discovery made. Section 5163 is the subject-matter of instruction to the jury upon request. If the refusal by a plaintiff to have the sanctity of her person invaded, *after the court has declined to require it* to be done, rests upon the same principle of lack of good faith as the intentional concealment of material evidence referred to in §5163 of the code, then the defendant would have the right to have the jury given such a rule to guide them in considering the testimony of refusal. In my opinion this would be a palpable invasion of the rights of the judiciary by the jury. I so thoroughly trust and respect the findings of juries generally that I might be willing to go to the extent of conceding the position, except for the fact that I believe such review would be subversive of that authority and respect which must necessarily attach to the office of the judge in order to insure the orderly administration of the law. If the judge has the discretion to order a physical examination, as held in *Childress* v. *R. & D. R. Co.,* and exercises it by a refusal, that is an end of the matter, except upon review of his discretion. In my opinion, the decision in the *Wainwright* case fully sustained the trial judge in his ruling. In the first application there was no attempt to follow the formula suggested by Chief Justice Bleckley in the *Childress* case. The

proper request was made on the second effort; but it came too late, according to the holding in the *Vining* and *Wainwright* cases. The only proper motion for physical examination was at the trial. According to the ruling in these cases it was untimely.

If, however, the judge erred, as before stated, I think his action should be reviewed by a court for the correction of such errors, and not by a jury; and therefore the judge did not err in repelling the evidence. The presiding judge should not be put on trial before a jury in his own court for an abuse of his discretion. This would have been the inevitable result of admitting the evidence that the plaintiff declined to submit to a physical examination. The defendant having proved this, the plaintiff would have the right to give her reasons for declining; and it would be idle to suppose that she would fail to give her best one,—the fact that the judge had declined to order her to be examined. This would certainly satisfy the jury that the judge was not convinced that there was bad faith in her claim of injury, and afford the jury reason for resenting a mere innuendo. For this reason it would be incumbent upon the defendant, not only to insist in argument before the jury, but also to prove, if possible (by showing that the plaintiff's injury was a sham), that the judge had abused his discretion, and that if he had exercised his discretion otherwise, the fraud would have been more fully disclosed. And thus would be exposed the spectacle of the judge (whose usefulness is underminded whenever confidence not only in his impartiality but also in his wisdom is gone) on trial in his own court. My associates say that it is the conduct of the plaintiff, and not of the court, which is and should be reviewed by the jury. I judge from observation and experience that where the discretion has been invoked and exercised, a separation of the discretion from the conduct of the plaintiff sheltered by it is practically impossible. There is no assignment here that the judge abused his discretion. How he exercised it is of no concern to the jury. If it was properly exercised, and the case was not one of an enforced physical examination, the fact that the plaintiff at her option refused one was as immaterial as if she had declined a proposition to continue the case. Even if the evidence should have been admitted, the error is not such a one as calls for another trial at the expense of the county. The evidence sought by the defendant is worth nothing, unless it satisfies

the jury that the plaintiff's claim of permanent injury is so suspicious as most likely to be false. With the knowledge which the jury would obtain, that the presiding judge had twice declined to use his power, because the showing of the defendant was so defective, for some reason that the court had not thought the examination necessary or proper in furtherance of justice, it is hardly probable that the evidence of refusal, accompanied as a natural sequence by its explanation, would have been of any practical benefit to the defendant. If the testimony of the plaintiff is credible unless poisoned by the doubt raised by her refusal to be examined, viewed as a practical proposition it is more than likely that her explanation will remove the doubt.

The defendant introduced no testimony whatever to dispute the evidence of culpable negligence in its care of the bridge. It offered no witnesses to question, and perhaps could offer none to deny, the pain and suffering endured by the plaintiff, even if she has recovered. It did not ask and could not hope to disprove more than the  plaintiff's claim of permanent injury. The jury may have given a verdict of $1,250 for pain and suffering alone, and, in view of our past rulings, it can not be held that the standard of their enlightened conscience is too high. I go further. In my experience of twenty-six years at the bar and on the bench, I have observed that juries are hard to deceive. The jury which tried this case well understood that the plaintiff was asking damages for permanent injuries. So far as appears from the record, the request for the examination was made in open court, and the offer to prove the refusal to be examined, which the court declined to allow by declining to permit the questions answered, was no doubt in the presence of the jury. As a matter of fact, though not of law, it was inevitable that attention of the jury was fixed on the physical appearance of the plaintiff. We have no means of knowing or guessing what her appearance was, but the jury saw it and had the right to weigh it in considering the probability of the plaintiff's story. If she did not show some of the tell-tale signs which mark such suffering as she claimed to have endured, it is safe to assume that the jury were satisfied that the plaintiff might yet be restored to health. If they were convinced that the plaintiff's injuries are permanent, then the verdict is so much smaller than the plaintiff was entitled to recover that the defendant has no right to

complain. In my humble opinion the judgment should be affirmed; and I am the more firmly convinced by reason of the fact that the authorities quoted by my brethren in support of their judgment, with the exception of that from Watson on Damages, are, to my mind, clearly obiter dicta used arguendo.

POWELL, J. The court is unanimous in the opinion that for the most part the trial is free from error; but a majority of us can not agree with our brother Russell, who has written the opinion in chief, that the court did not err in refusing to permit the defendant to prove, for consideration by the jury, the fact that a timely request had been made of the plaintiff to allow a committee of competent and disinterested physicians to examine her person privately and under circumstances of least embarrassment to her, with a view of ascertaining whether the injury was as serious as she claimed, and whether the effects were really to be permanent. The almost uniform current of authority is to the effect that such a refusal may be shown. "Whether the trial court is denied the power to compel a party to submit to a physical examination, or, having the power and having made an order therefor, does not resort to extreme means to enforce it, evidence, as a rule, is undoubtedly competent for the consideration of the jury that the plaintiff was requested or ordered to submit to an examination of his person and refused to do so." Watson on Damages for Personal Injuries, §675. Such evidence is competent because it tends to illustrate the faith, good or bad, in which the plaintiff's demand is asserted. It stands upon a cognate principle to that presented in the Civil Code, §5163, that "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, the presumption arises that the charge or claim is well founded; but this presumption may be rebutted." The Federal courts have no power to order such physical examinations; and yet even in those courts the defendant may prove that the plaintiff has refused a request for such examination, if the request be reasonably made. Union Pacific Ry. Co. v. Botsford, 141 U. S. 255, citing Clifton v. United States, 4 How. 242, and Turquand v. Strand Union, 8 Dow. 201, 4 Jurist, 74. The

right to prove the plaintiff's refusal is entirely independent of the court's power to enforce an order for an examination, as well as of the court's refusal to compel one where the power does exist. It is the plaintiff's conduct, not the court's that is to be submitted to the consideration of the jury. They should consider it, together with any explanation offered by the plaintiff in regard thereto, and give to it just such weight as they deem proper. The doctrine announced is unequivocally asserted as a matter of general law in the following cases: Beckwith v. N. Y. C. & H. R. R. Co., 64 Barb. (N. Y.) 307; Elfers v. Wooley, 116 N. Y. 294; Schroeder v. C., R. I. & P. R. Co., 47 Iowa, 375; M. & M. Turnpike Co. v. Bailey, 37 Ohio St. 104; Stack v. N. Y., N. H. & H. R. Co., 177 Mass. 155, 52 L. R. A. 328. In the case last cited, the Supreme Court of Massachusetts, through Justice Holmes, denies the power of the court to compel an examination, but says: "No doubt, in general, a refusal to be examined by a doctor sent by the other side would be admissible in evidence." In that case it also held, as in *Wainwright's* case, 99 *Ga.* 255, that if the plaintiff does not refuse to submit to an examination but merely makes the objection to the one proposed that it is not timely or impartial, and the court sustains the objection, the defendant should not be allowed to prove such an objection as a refusal. In this, *Wainwright's* case is perfectly distinguished from the case at bar; for here the offer was timely and safely guarded against objectionable features.

Chief Judge Hill concurs in this view; and, in our opinion, the judgment must be reversed for the error herein noticed.