## 7507. TEMPLES *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. The action being for the recovery of damages on account of personal injuries received by the plaintiff while engaged as an employee of the defendant railway company in interstate commerce, there was no presumption of negligence against the defendant; and the court did not err

in charging the jury generally that the burden of proof rested upon the plaintiff throughout the case, and in failing to instruct the jury as to when and under what circumstances this burden might be shifted.

2. The charge complained of in the 9th ground of the motion for a new trial is in exact accord with the ruling in *Worlds* v. *Georgia Railroad Co.*, 99 *Ga.* 283 (2) (25 S. E. 646), which was approved in *Freeman* v. *Savannah Electric Co.*, 130 *Ga.* 449, 454 (60 S. E. 1042); and this ground of the motion is therefore without merit. The decision in the case of *Southern Railway Co.* v. *Rutledge*, 4 *Ga. App.* 80 (60 S. E. 1011), is not at variance with these rulings or with the ruling now made.

3. There is no merit in the objection made in the 10th ground of the motion for a new trial to an excerpt from the charge of the court relating to the doctrine of assumed risks. *Washington & Georgetown R. Co. v. McDade*, 135 U. S. 554 (10 Sup. Ct. 1044, 34 L. ed. 235, 241); *Seaboard Air-Line Railway v. Horton*, 233 U. S. 492, 504 (34 Sup. Ct. 635, 58 L. ed. 1062, 1070, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475); *Middle Ga. &c. Ry. Co.* v. *Barnett*, 104 *Ga.* 582, 584, 585 (30 S. E. 771); *Charleston and Western Carolina Railway Co.* v. *Sylvester*, 17 *Ga. App.* 85 (86 S. E. 275). In the absence of any request for a fuller charge where a correct charge as to the assumption of risk is given, the failure to instruct precisely as to what would not constitute an assumption of risk by the plaintiff is not reversible error. See, in this connection, *Charleston &c. Ry. Co.* v. *Brown*, 13 *Ga. App.* 744, 751 (79 S. E. 932). The charge did not tend to confuse the jury, nor was it subject to the exception that it was calculated to prejudice the plaintiff's case because argumentative.

4. There is no merit in the 11th ground of the motion for a new trial, as the charge complained of did not tend to eliminate or disparage any evidence offered in behalf of the plaintiff.

5. There is no merit in the 12th and 13th grounds of the motion for a new trial, assigning error because the court appointed a commission of physicians to make a physical examination of the plaintiff. No abuse of discretion by the trial court appears, and no objection was raised to the personnel of the commission appointed.

6. The court did not err in holding that the juror objected to by the plaintiff was not disqualified, and in declining to require him to stand aside.

7. The ground of the motion for a new trial that "a new trial is demanded by the general countenance of the case," etc., need not be considered.

DECIDED FEBRUARY 16, 1917.

Action for damages; from city court of Albany—Judge Clayton Jones. April 27, 1916.

*John Henry Pool,* for plaintiff.

*Pottle & Hofmayer,* for defendant.

WADE, C. J. The 4th, 5th, 6th, and 8th grounds of the motion for a new trial are expressly abandoned in the brief of counsel for the plaintiff in error. No review of the evidence developed at the

trial is necessary, nor is it necessary to amplify any of the rulings set out in the foregoing headnotes, other than the 1st, 5th, and 6th, referring to the 7th, 12th, 13th, and 14th grounds of the motion for a new trial.

[1] The 7th ground of the motion for a new trial assigns error on the following excerpt from the charge of the court: "The burden of proof in this case rests upon the plaintiff. There is no presumption of negligence against the defendant. The fact that the plaintiff may have been injured raises no presumption of negligence against the defendant, but the burden rests upon the plaintiff throughout the case to prove that any injury he may have received was caused by the defendant's negligence." It is clear that there is no substantial merit in this exception. Under the allegations of the amended petition of the plaintiff and the admissions made in the plea of the defendant, the plaintiff was employed by the defendant in interstate commerce at the time he suffered the alleged injury, and the Federal "employer's liability act" of 1908 therefore governs, to the exclusion of the State statute. *Landrum* v. *Western & A. R. Co.,* 146 *Ga.* 88 (90 S. E. 710). "As the action is under the Federal employer's liability act, rights and obligations depend upon it and applicable principles of common law as interpreted and applied in Federal courts. Seaboard Air-Line Railway v. Horton, 233 U. S. 492 [34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834]; Central Vermont Ry. Co. v. White, 238 U. S. 507 [35 Sup. Ct. 865, 59 L. ed. 1433, 9 N. C. C. A. 265]; Great Northern Ry. Co. v. Wiles, 240 U. S. 444 [36 Sup. Ct. 406, 60 L. ed. 732]." Southern Ry. Co. v. Gray, 241 U. S. 333 (36 Sup. Ct. 558, 60 L. ed. 1030). This being true, no presumption of negligence on the part of the defendant was created by proof of the injury resulting to the plaintiff while so engaged in interstate commerce. *Ivey* v. *Louisville & Nashville R. Co.,* 18 *Ga. App.* 434 (89 S. E. 629). It was held by the United States Supreme Court in Southern Ry. Co. v. Prescott, 240 U. S. 632 (36 Sup. Ct. 469, 60 L. ed. 836), in passing upon the liability of a carrier under a bill of lading for an interstate shipment, that the question as to responsibility under the bill of lading was a Federal question, and that "the railway company was therefore liable only in case of negligence. The plaintiff, asserting neglect, had the burden of establishing it.

This burden did not shift." This is equally true in a personal injury suit brought under the Federal "employer's liability act." The charge of the court complained of amounted to no more than a mere statement of the law that the burden of proof rested upon the plaintiff, or that he must prove his case by a preponderance of evidence, and was equivalent to the final instruction "if you believe, by a preponderance of the evidence, that the plaintiff should prevail," etc., given by request of counsel for the plaintiff. As was said by Justice Lumpkin in *Hawkins* v. *Davie*, 136 *Ga.* 550, 552 (71 S. E. 873), "Where the presiding judge, in an ordinary action at law, correctly charges the jury in regard to the general burden of proof, he is not required, as an essential part of his charge, to discuss the shifting of the burden of introducing evidence on special points which may arise during the progress of the case; and it will not be held error that he omits to do so." See also *Martin* v. *Nichols*, 127 *Ga.* 705, 709 (56 S. E. 995) ; *Brandon* v. *Pritchett*, 133 *Ga.* 480 (66 S. E. 247) ; *Central of Georgia Ry. Co.* v. *Manchester Mfg. Co.*, 6 *Ga. App.* 254 (64 S. E. 1128). There was no request for a charge upon any rule of evidence or upon the shifting of the burden of evidence.

[5] The 12th ground of the motion for a new trial is as follows: "Because the court erred in appointing Dr. J. C. Keaton [and] Dr. J. M. Barnett to examine the person of plaintiff; to which plaintiff objected at the time of the appointment, upon the ground: that said examination caused plaintiff nervous derangement and physical pain and exhaustion; that plaintiff was willing to be examined in the presence of the jury, and expected to be examined that way; that defendant's doctors had already made ample examination of plaintiff; which objections were then and there overruled, and the appointment made, and an examination made in pursuance thereof." The 13th ground of the motion for a new trial is as follows: "Because the court erred in admitting the following material evidence [set out in an exhibit attached] of Dr. J. M. Barnett, of the examination made by him of the person of plaintiff W. H. Temples, under the order of the court. Movant objected to the evidence at the time it was offered, and did then and there urge the following ground of objection: because said Dr. J. M. Barnett had twice previously testified upon behalf of the defendant." To these two grounds of the motion the trial

judge attaches the following note: "In reference to grounds 12 and 13, defendant made due application for a commission of doctors to examine the plaintiff, which was duly assigned for hearing and heard on the 13th day of October, 1915. After hearing the same on the pleadings and evidence submitted, including the briefs of evidence of the two previous trials, I announced that under all of the circumstances I thought the appointment of a commission was proper and would grant an order accordingly. Suggestions were made as to whether or not the doctors should be appointed from other cities, or whether or not they should be residents of Albany, and both sides seemed to prefer the appointment of resident doctors, and I invited suggestions from both sides informally, in an effort to get doctors who would be agreeable to both sides. When the name of Dr. Keaton was suggested I mentioned the fact that he was my brother-in-law, and both sides stated that would not affect the matter, and made no objection personally to his appointment. It was further stated that he was the only doctor in the city who had an X-ray machine. Dr. Barnett's name was suggested by me, as I recall it, because he was generally recognized as one of the most competent physicians and surgeons in south Georgia, and the court knew also that he was a man of high honor and integrity. Plaintiff's counsel said that he previously testified in the case, but the record showed also that he had never examined the plaintiff, had previously testified on hypothetical questions, and that there was practically no dispute between the doctors who testified on both sides in the former trials in regard to the answers on these hypothetical questions. When this appeared, counsel for the plaintiff stated that while he objected to the appointment of a commission, he had no objections to offer to Dr. Barnett or Dr. Keaton, his objections going to the appointment of any commission of doctors. From all that occurred and was said at the hearing, I understood that the appointment of the two physicians named was satisfactory to both sides, as they were to the court, in so far as their professional and personal standing, ability, integrity, and impartiality were concerned, and I never heard any suggestion to the contrary from plaintiff or his counsel until after the physicians named had examined the plaintiff. The court ordered the examination of the plaintiff to take place at Columbia, Ala., where plaintiff was, and refused to order it done

at Albany; but it was agreed by counsel that plaintiff's counsel was to try to get his client to come to Albany at defendant's expense, in which event it was agreed that the examination might be held at Albany. At a hearing before me about two or three weeks before the case was assigned for trial, I was informed that the plaintiff refused to come to Albany and would not let the doctors examine him if they came to Columbia, Ala., unless his doctor was present. Defendant then insisted on the right to have its doctor also present, and I was asked by both sides to construe the order previously granted, which I did by inserting in the order, by consent of both sides, that no one should be present except the doctors heretofore appointed. It was brought to the attention of the court later, some time having been consumed in the effort to have the examination made at Albany, that the doctors had not been able to go to Columbia, for various reasons, one of them when a date had been set, on account of the continued critical illness of one of the members of the family where one of the doctors appointed lived. The case had been assigned for trial for the 16th day of November, 1915, on Tuesday, and, for the reasons above stated, it was brought to the attention of the court that defendant's counsel had requested plaintiff's counsel to have his client come to Albany on the day before the case was set, so that the doctors could examine him then; otherwise, they stated, they would be compelled to ask the court to postpone the case sufficiently long to have the examination made on the day the case was assigned for trial. About two days before the case was set, plaintiff's counsel came up to the bench while another case was on trial, and stated to the court the contentions of defendant's counsel, as above set forth, and asked if I would postpone the case if the examination was not had previous to the trial. I stated to counsel that I hoped he would have his client submit to the examination before trial, because neither the doctors nor defendant's counsel had been at fault, and if defendant made a motion on the date the case was assigned for trial, for the reasons above stated, to postpone the case sufficiently long for such examination to be had, I would be compelled as a matter of justice to do so, although I did not want to do it, as that was the last case left on the calendar for trial, and there was no other business before the court to occupy the attention of the jury."

The objection raised in the 12th ground was to the appointment of any commission to examine the plaintiff, unless the examination was to be conducted in the presence of the jury; whereas in the 13th ground the plaintiff insisted that the court erred in admitting the evidence of one of the physicians who conducted the examination by an order of the court, for the reason that this physician had previously testified twice as a witness called by the defendant. It will be observed from the note of the trial judge, which is quoted above in full, that the witness Dr. Barnett had previously testified in reply to hypothetical questions propounded to him, but had never personally examined the plaintiff, and that there was no actual dispute between the various physicians who testified for the plaintiff and the defendant at the former trials of the case as to the correctness of his answers to these hypothetical questions. It furthermore appears, from the note of the presiding judge, that when the commission was named, counsel for the plaintiff in the lower court stated that "while he objected to the appointment of a commission, he had no objections to offer to Dr. Barnett or Dr. Keaton, his objections going to the appointment of any commission of doctors." The defendant, in applying for the appointment of a medical commission, appears to have acted in accordance with the practice approved in such cases. It was held in *Richmond & Danville R. Co.* v. *Childress*, 82 *Ga.* 719 (9 S. E. 602, 3 L. R. A. 808, 14 Am. St. R. 189), that "It is within the discretion of the trial court to require the plaintiff suing for a physical injury, alleged to be permanent, to submit to an examination by competent physicians, at the instance and at the expense of the defendant in the action, to ascertain the nature, extent, and probable duration of the injury, so as to afford means of proving the same at the trial." See also *City of Cedartown* v. *Brooks*, 2 *Ga. App.* 583 (2), 590, 597 (59 S. E. 836). This power "is one to be exercised or not according to the sound discretion of the presiding judge." *Macon & Birmingham Ry. Co.* v. *Ross*, 133 *Ga.* 83 (65 S. E. 146). There is nothing in the record in this case to suggest that the trial judge abused his discretion in appointing a commission, or that the appointment of Dr. Barnett on the commission was improper, or that the testimony thereafter delivered by him was legally inadmissible for any reason.

[6]    The 14th ground of the motion for a new trial is as fol-

lows: "Because the court erred in refusing to remove juror W. A. Sumter from the panel of twenty-four jurors put upon plaintiff, and thereby refusing to put another qualified juror upon the panel of twenty-four jurors; said juror being, plaintiff contended, disqualified for the reason he could obtain a pass over the defendant, the Central of Georgia Railway Company, by reason of his employment by the Georgia Southwestern & Gulf Railway Company; he not being able to obtain a pass automatically by his request, but his request, as movant contends, would have to go through the proper officials of the Central of Georgia Railway Company, the defendant, from the officials of the Georgia Southwestern & Gulf Railroad. When the above facts were elicited at the trial the plaintiff urged the objection that said juror was disqualified, and moved the court to put said juror off the panel of twenty-four, and to put on said panel of twenty-four jurors another qualified juror. The objections to said juror Sumter were overruled, and the motion to remove him from the panel of twenty-four jurors and to put in his place another juror upon the list of twenty-four jurors was overruled." It further appears in the record, from an exhibit attached to the motion, that at the trial of the case the plaintiff exhausted his entire six strikes and struck the juror W. A. Sumter. To this ground of the motion for a new trial the trial judge attaches the following note: "When objections were made to juror W. A. Sumter, as above stated, he was put on the court as trior, and upon the evidence submitted, including satisfactory answers by the juror to the questions on his voir dire, the usual questions being propounded to the juror under oath, I held that he was not disqualified as a matter of law, and that under the evidence he was a competent, impartial, and qualified juror."

When the panel of twenty-four jurors, including the juror W. A. Sumter, was put upon the plaintiff, the juror, upon examination, testified that he worked for the Georgia Southwestern & Gulf Railway Company, and as an employee of that railway company could obtain a pass over the Central of Georgia Railway Company, not on his own request, but by making proper application through the officials of the company employing him; that he was not employed by the Central of Georgia Railway Company, and had no connection with the Central in any way, and could only obtain

trip passes for transportation; that he did not believe he had received such a pass "for a long time," *and had no pass over the Central Railway Company at the time of the trial;* that he had no annual pass over the Central, and had never applied for one. In response to notice the Central of Georgia Railway Company produced several requests made during the years 1914 and 1915, and one on January 18, 1916, by the president and general manager of the Georgia Southwestern & Gulf Railway Company, for trip passes to be issued to Miss Rosalie Sumter, a dependent daughter of "W. A. Sumter, agent, G. S. W. & G. R. R." Several stubs showing the issuance of passes to Miss Sumter, referred to in the requests therefor as a person "not prohibited by law from receiving free transportation," were likewise produced. So far as can be determined from the requests therefor and from the stubs from which they were apparently detached, all of the passes shown by the evidence to have been issued to the dependent daughter of the juror Sumter were limited by their express terms to periods of 30 and 60 days, and all had therefore expired by limitation except one issued on October 20, 1915, good until December 22, 1915; and one issued January 20, 1916, which was, according to the request therefor, to cover a period of 60 days from its date. The record is silent as to whether the pass that was issued on November 22, 1915, to Miss Rosalie Sumter as the daughter of the agent of the "G. S. W. & G. R. R.," from Cuthbert to Atlanta and return, and which expired by its terms on December 22, 1915, was or was not used by her before the date when the jury was selected on November 16, 1915, for the trial of this case. To the contrary, the juror Sumter testified in his examination that *he* had no pass over the "*Central Railway now,*" and a fair interpretation of this testimony, in the absence of anything whatever to indicate the contrary, would be that neither the witness himself nor any dependent member of his family then had such an unused pass. The pass applied for on January 18, 1916, and issued January 20, 1916, was issued two months after the trial of the case, and therefore can not affect the consideration of question as to this juror's disqualification to try the case. It will be observed that the juror Sumter did not in fact sit on the jury that returned a verdict in favor of the defendant, the Central of Georgia Railway Company; but, of course, both parties to the case were entitled to have twenty-

four qualified and unbiased jurors put upon them, from whom to select the actual twelve who should hear the evidence and return a verdict. It appears that the plaintiff exhausted all six of the strikes to which he was entitled under the law, one of the jurors stricken by him being the juror W. A. Sumter; and therefore, if Sumter was in fact disqualified to serve as a juror, the plaintiff presumably suffered a substantial injury, as the number of his arbitrary strikes was thereby reduced to five only.

When this case was here before (15 *Ga. App.* 115, 82 S. E. 777), a new trial was granted because one of the jurors trying the case was an employee of the Atlantic Compress Company, a corporation in which the defendant, the Central of Georgia Railway Company, owned *at the time of the trial* 610 shares of stock of the par value of $100, and it was agreed when the motion was heard that, though the juror Whitehead owned no stock in either the Atlantic Compress Company or the Central of Georgia Railway Company, his position as an employee of the Atlantic Compress Company was his sole occupation, and, under his contract of employment, the duration thereof was fixed by the pleasure of his employer, and that the juror was under the impression and in a general way believed that the Central of Georgia Railway Company owned stock in the compress company, though he had no actual knowledge of the fact or of the amount so owned, and that he would testify that these facts did not in any way influence him as a juror in the trial of the case. The disqualification held to be material existed at the time when the juror Whitehead actually served, for the Central of Georgia Railway Company *then* owned the stock in the Atlantic Compress Company, and Whitehead was *then* an employee of the latter company, and subject *at that time* to a discharge, which might be brought about or induced by the Central of Georgia Railway Company, as one of the large stockholders of the compress company. In the trial now under consideration there was no evidence showing that either the juror Sumter or any member of his family *then* was in possession of any unused pass or other evidence of favor from the Central of Georgia Railway Company. Sumter neither owned stock in the Central of Georgia Railway Company nor had any apparent interest in the result of the litigation between the plaintiff and that company. The court saw no reason to impute to him bias or prejudice, either from his de-

meanor when examined on the voir dire, or on account of any circumstances in proof; and nothing appears to indicate that this witness was in fact consciously biased or prejudiced in the case, or that any existing facts might subconsciously warp or affect his judgment. As there is nothing to show that at the time of the trial the witness Sumter was in possession of any pass or other evidence of favor or consideration from the Central of Georgia Railway Company, it would be stretching the rule beyond reasonable or practical limits to hold that the grant of a trip pass to an employee of one railroad company by the officers of another road, not upon his request, but by the request of the officials of the company for which he worked, amounted to such a personal favor to the employee as would disqualify him as a juror in a case where the company issuing the pass was a party. Such passes are issued by permission of the law, and are received by an employee, whether over his own company or obtained for him from another road upon the request of his superior officers, generally as a matter of course as well as of right, and actually place the recipient under no obligation to the road granting the pass. Where the pass is granted on another road the applicant is not personally known in the matter, but the pass is issued upon the request of his superiors, who reciprocate in like cases when called upon by the other company in behalf of its employees. To say that an employee of one railroad company, who had several times ridden upon the road of another company on passes obtained from it by his own employer, would feel any appreciable degree of interest or bias towards the company from which his own company had obtained for him a trip pass would be exaggerating beyond all reasonable bounds the influence of the sentiment of gratitude. In fact, to arrive at such a conclusion, it would appear that gratitude was not the rarest, but the commonest of human virtues.

From the former opinion in this case (*Temples* v. *Central of Georgia Railway Co.,* 15 *Ga. App.* 115, 82 S. E. 777), it appears that Whitehead, on account of whose disqualification as a juror a new trial was granted, actually served on the jury that returned the verdict complained of, while in the present case the juror Sumter did not aid in fashioning the verdict arrived at by the jury. Regardless of what may be the rule in other jurisdictions, the question as to the disqualification of a juror in this State must be

determined by the law of this State, as declared by the Supreme Court and this court. Without intending to recede from the doctrine asserted by this court when this case was formerly here for review, no reason for extending the rule there laid down is now presented, nor do we think that any extension is authorized by law. In this view we are confirmed by the ruling of the Supreme Court in *Campbell* v. *State,* 144 *Ga.* 224 (87 S. E. 277), and, under the facts in this record, we hold that the trial judge did not err in finding the juror Sumter qualified to serve.

It may not be inapropos to say generally that there was a sharp conflict in the evidence as to whether or not the plaintiff in this case had in fact suffered injury as alleged by him, and some testimony from which the jury were authorized to infer that if the plaintiff had in fact suffered such injury, the injury resulted from accident purely, and not from negligence on the part of the defendant. Likewise, at the trial now under review a sharp attack was made upon the credibility of the plaintiff, and admissions were drawn from him that on previous trials he made various statements which he knew to be untrue, for the purpose of misleading, or, as he expressed it, "bluffing" counsel for the defendant. It is not for us to say what degree of credibility a jury should attach to the testimony of any witness or witnesses in a trial, or to question their acceptance of the testimony of the medical commission appointed by the court, to the general effect that the plaintiff was a malingerer, who was not in fact suffering from any physical injury, but that his state of health resulted from his unfortunate and long-continued use of drugs. The conclusion reached by the jury is apparently supported by a preponderance of the testimony, but whether this is true or not it is not within the purview of this court to determine. The fact that after two previous verdicts in his favor, the jury hearing the explanations offered by the plaintiff as to his previous contradictory evidence, and hearing the testimony of the physicians who examined him under the order of the court, to the effect that he was not injured at all, and also hearing his own statements in regard to this physical examination, and observing his manner while on the stand, nevertheless found a verdict against him and in favor of a railroad corporation, in whose behalf but little partiality is generally shown by the mass of citizens from whom juries are drawn, indicates clearly that in the

opinion of the jury the burden resting upon the plaintiff, to establish all the essential allegations showing injury to him and negligence on the part of the defendant, was not successfully carried; and there was no presumption against the defendant to aid the plaintiff in this case.

Judgment affirmed. George and Luke, JJ., concur.